UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CIARA JACKSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 14-cv-6384 |
| v. ) | |
| ) | Judge John W. Darrah |
| DAKKOTA INTEGRATED SYSTEMS, LLC, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Ciara Jackson filed a Complaint against Defendant Dakkota Integrated Systems, LLC ("Dakkota") for sexual harassment, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/*et seq.* On December 7, 2015, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's Motion for Summary Judgment [51] is granted in part and denied in part.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper

denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F.Supp.2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## BACKGROUND

The following facts are taken from the Complaint and the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff is a female formerly employed by Dakkota from in or around February of 2012 through September 12, 2013. (Compl. ¶¶ 5, 30.) Dakkota is an automotive parts assembler and sequencer with an assembly plant in Chicago, IL. (Dkt. 52 ¶ 1.) On August 6, 2012, Plaintiff began working at Dakkota's Chicago facility as an Operator/Production Assistant. (Dkt. 52 ¶ 15.) When Plaintiff was hired, she was given a copy of the Employee Handbook, which was reviewed with her during the orientation process. (Dkt. 52 ¶ 18.) Dakkota's employee guidelines include procedures regarding attendance, safety, discipline, and dress code. (Dkt. 52 ¶¶ 7-19.) Employees are subject to discipline for violating the Attendance Policy, failure to follow the Call-In Procedure for absences or late arrivals, failure to follow supervisor instructions, ignoring or violating safety rules, or violations of any other rules or policies. (Dkt. 52 ¶ 13.) Dakkota's employees are represented by Local 3212 of the United Auto Workers' Union ("UAW") and are subject to a collective bargaining agreement between Local 3212 and Dakkota. (Dkt. 52 ¶ 2.) The collective bargaining agreement specifies a five-step progressive discipline policy: counseling, first written warning, second written warning, final written

warning/suspension, and then termination. (Dkt. 52 ¶ 13.) From February of 2012 through June or July of 2013, Plaintiff's direct supervisor was Production Supervisor Jeff Shepherd. After that time, Production Supervisor Curtis Dancy became Plaintiff's direct supervisor. Dancy reported to Renee Wicinski. (Dkt. 52 ¶¶ 32-35.)

When Plaintiff began working at Dakkota, she engaged in a "flirtatious relationship" with Shepherd.[1] This includes an exchange of flirtatious messages, as well as pictures sent from Plaintiff's personal email account to Shepherd's email account. (Dkt. 52 ¶ 52.) The parties dispute whether Shepherd then expressed a desire to pursue a relationship with Plaintiff. (Dkt. 52 ¶ 55.) On several occasions, Plaintiff's coworkers called her a "hoe" or made other comments about her "butt, breasts, and body." (Dkt. 52 ¶¶ 57-60.) Plaintiff also alleges that Shepherd may have called her a "hoe" either to her face or in reference to her and that she was told by another employee that Shepherd claimed that he engaged in sexual intercourse with her. (Dkt. 52 ¶¶ 56, 61.) Plaintiff had no further contact from Shepherd after June or July of 2013. On July 27, 2013, Plaintiff received a string of text messages from Human Resources Manager Wayne Washington. The messages were sexual in nature. The parties dispute whether these messages were sent to Plaintiff intentionally. (Dkt. 52 ¶¶ 64-67.) Other than these messages, Plaintiff has never received any other messages from Washington, nor has he ever said or done anything else "inappropriate" toward Plaintiff. (Dkt. 52 ¶ 68.)

During her employment at Dakkota, Plaintiff was disciplined multiple times and received counseling and write-ups. (Dkt. 52 ¶ 21.) Plaintiff was verbally counseled several times for

---

[1] The parties do not agree on the length and timing of this "flirtatious" interaction. Both parties agree that the relationship began in February of 2012.

3

wearing inappropriate work attire, specifically, for wearing leggings or other clothing that violated Dakkota's dress code and ignoring her supervisor's instructions to remove large earrings that presented a safety risk. Plaintiff was also disciplined for failing to wear her safety glasses while working on the plant floor. (Dkt. 52 ¶¶ 21-30.)

On July 30, 2013, Plaintiff received a "Final" disciplinary notice for taking excessive break time. (Dkt. 52 ¶ 36.) On August 14, 2013, Plaintiff received counseling for inappropriate work attire. This was her fourth infraction for violating the dress code. (Dkt 52 ¶¶ 24-26, 39.) Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR"), alleging that she had been subjected to sexual harassment on September 4, 2013. Plaintiff subsequently filed additional charges alleging she had been subjected to discrimination on the basis of her sex and retaliation. (Dkt. 61 ¶ 25.) On September 10, 2013, Plaintiff went to see a doctor and received a note excusing her from work that day. Plaintiff did not go to work and did not follow the Call-In Procedures in the Attendance Policy. (Dkt. 52 ¶ 42.) On September 12, 2013, Plaintiff was presented with a termination notice according to the progressive discipline system. The notice indicated she was being terminated for failure to follow Call-In Procedures on September 10, 2013. (Dkt. 52 ¶ 47.)

Plaintiff filed this claim because she alleges she was subject to sexual harassment, gender discrimination and retaliation while employed by Defendant. Defendant argues that Plaintiff cannot demonstrate the essential elements necessary to maintain her claims and that she was discharged according to the progressive discipline system under the collective bargaining agreement between Dakkota and Local 3212 of the UAW.

## LEGAL STANDARD

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party is responsible for informing the court of what in the record or affidavits demonstrates the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its burden, the nonmoving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there is still a genuine issue of material fact. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252.

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Anderson*, 411 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 411 U.S. at 249-250.

# ANALYSIS

## *Plaintiff's Sexual Harassment Claim*

A hostile work environment claim under the IHRA is analyzed under the same framework as a Title VII hostile work environment claim. *Thomas v. Comcast of Chicago, Inc.*, No. 11-CV-1209, 2012 WL 3205008, at *5 at n.1 (N.D. Ill. Aug. 2, 2012). To establish a claim for hostile work environment harassment, Plaintiff must show: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe and pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and (4) there is basis for employer liability. *Kampmier v. Emeritus Corp.*, 477 F.3d 930, 940 (7th Cir. 2007).

First, there must be a determination as to whether or not a jury might reasonably conclude Plaintiff was subjected to unwelcome harassment. *Kampmier*, 472 F.3d at 940. Defendant argues that Plaintiff cannot demonstrate that her alleged harassment from Shepherd or Washington was unwelcome. While it is undisputed that Plaintiff pursued a romantic relationship with Shepherd, Plaintiff alleges that this relationship ended in May of 2012. After May of 2012, Plaintiff alleges that an employee named Jermaine Walton informed her that Shepherd told Walton that he was having a sexual relationship with her, and when she confronted Shepherd, that he played a song with lyrics implying that she was a "hoe". (Dkt. 52 ¶ 61; Plaintiff Dep. 369:2-19.) Plaintiff also alleges that he and other male coworkers subjected Plaintiff to ongoing harassment in the form of name-calling and derogatory comments about her physical appearance. Plaintiff testified in her deposition that Shepherd "brushed up against" her and "began to make sexual gestures of how he wanted to have sex" with her. (Plaintiff Dep.

313:5-12.) Plaintiff further alleges that Shepherd accessed her phone while it was charging and sent several graphic photos of her to his personal email account. (Dkt. 61 ¶¶ 14, 15.) Whether Plaintiff pursued a relationship with Shepherd in the past does not necessarily discount any sexual harassment that occurred after that relationship may have ended.

Defendant also argues that Plaintiff cannot show that any alleged sexual harassment was based on her sex, arguing that any sexual comments or rumors about her were because of Plaintiff's own conduct (i.e., sending pictures of herself to Shepherd). Again, whether or not Plaintiff initially pursued a relationship with Shepherd does not necessarily negate that there was other sexual harassment against her and does not provide a basis for concluding that any unwelcome rumors or name-calling was not based on her sex. There is a clear issue of material fact as to whether Plaintiff was subjected to unwelcome sexual harassment.

Defendant further contends that there is no basis for employer liability in this case. An employer may raise an affirmative defense to liability when no tangible employment action is taken against the employee in the course of the harassment. *Passananti v. Cook Cty.*, 689 F.3d 655, 670 (7th Cir. 2012). "The [affirmative] defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff-employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* Defendant argues that Plaintiff has not shown that Shepherd took a "tangible employment action" against her as part of his claimed harassment and therefore, the affirmative defense of liability is available to them. However, Plaintiff alleges in her Response that Shepherd began issuing write-ups and discipline to Plaintiff after she terminated their

"flirtation". (Dkt. 58 at 3.) Plaintiff was also terminated from her position at Dakkota. All of these actions are "tangible employment actions." Thus, an affirmative defense to liability is not available to Defendant in this case. Defendant's Motion is denied as to Count I of Plaintiff's Complaint.

*Plaintiff's Gender Discrimination Claim*

"A Title VII gender discrimination claim can survive summary judgment if the plaintiff presents either direct or circumstantial evidence of discrimination (the "direct method") or indirect evidence that satisfies the three-part, burden shifting test outlined in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ("the indirect method")." *Phelan v. Cook Cty.*, 463 F.3d 773, 779 (7th Cir. 2006). Under the direct method of proving discrimination, proof "is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion." *Luks v. Baxter Healthcare Corp.,* 467 F.3d 1049, 1052 (7th Cir. 2006). Rather, an employee also can provide circumstantial evidence "which suggests discrimination albeit through a longer chain of inferences." *Id.* The key to the direct method of proof is that the evidence, whether direct or circumstantial, "points directly to a discriminatory reason for the employer's action." *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008), *as corrected* (Jan. 21, 2009).

Plaintiff contends that sexual harassment is a form of sex discrimination and that a finding of harassment in this case "necessitates a finding of discrimination," citing to *DeClue v. Central Ill. Light Co.*, 223 F.3d 434, 437 (7th Cir. 2000). (Dkt. 58 at 12.) However, "[s]exual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts either by coworkers or supervisors to make the workplace intolerable or at

8

least severely and discriminatorily uncongenial to women ('hostile work environment' harassment), and also efforts (normally by supervisors) to extract sexual favors by threats or promises ('quid pro quo' harassment)." *DeClue,* 223 F.3d at 437. Plaintiff provides no argument or evidence that any sexual harassment toward her was a result of effort by her coworkers or supervisors to make the workplace hostile toward women. She also provides no evidence to support her assertion that there was a discriminatory reason for any adverse employment action against her.

Plaintiff similarly does not offer any argument or evidence in support of an indirect method of proof of gender discrimination. To show a *prima facie* case of gender discrimination, Plaintiff must show that: "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly-situated male employees." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). Plaintiff alleges no facts that support a claim that she was treated less favorably than similarly-situated male employees and testified in her deposition that she did not feel that she was treated different because of her gender. (Dkt. 52 ¶ 74.) As there is no genuine issue of material fact as to Plaintiff's gender discrimination claim, Defendant's Motion is granted as to Count II of Plaintiff's Complaint.

*Plaintiff's Retaliation Claim*

As in discrimination claims, retaliation can be proved using either the direct or indirect method. *Haywood v. Lucent Techs., Inc.,* 323 F.3d 524 (7th Cir. 2003.) To prove retaliation under the direct approach, a plaintiff must present evidence of: (1) statutorily protected activity; (2) an adverse action; and (3) causal connection between the two. *Burks v. Wisconsin Dep't of*

9

*Transp.*, 464 F.3d 744 (7th Cir. 2006). It is undisputed that Plaintiff engaged in some form of protected activity. Defendant acknowledges Plaintiff's filing of an IDHR charge on September 4, 2013 constituted protected activity. (Dkt. 52 at 13.) However, Defendant disputes whether Plaintiff can show that anyone at Dakkota had knowledge of her protected activity and thus cannot show a causal connection between that activity and any adverse employment action. Defendant asserts that it did not have knowledge of the IDHR complaint until September 23, 2013. Plaintiff argues that the timing of her termination, one week after her IDHR charge, is sufficient that a reasonable jury could conclude that her termination was retaliation of her protected activity. However, while Plaintiff contends that Defendant knew of her complaint prior to that date, she produces no evidence or personal knowledge to support this contention. Plaintiff stated in her deposition that "I have none [proof]. I don't know when they actually received [the IDHR complaint]." (Plaintiff Dep. 391:20 – 391:1.)

Plaintiff also alleges that she contacted Defendant's corporate headquarters to complain about the harassment she was experiencing almost one month prior to her termination. Plaintiff testified at her deposition that she called Dakkota's general corporate number to complain that her "HR Manager" was "harassing" her, met with Plant Managers to complain that she was being harassed about her clothing by Shepherd and two women in HR, and complained to her UAW union representative that she felt harassed by the various write-ups she was issued by Shepherd. (Dkt. 52 ¶¶ 69-71; Dkt. 61 ¶¶ 24, 25.) However, Plaintiff does not allege that she reported that she was being sexually harassed in any of those complaints. *Id.* As there is no genuine issue of material fact as to the causal connection between Plaintiff's protected activity and any adverse employment action, Defendant's Motion is granted as to Count III of Plaintiff's Complaint.

10

*Plaintiff's Claims for Backpay and Frontpay*

Finally, Defendant argues that summary judgment of Plaintiff's claims for backpay and front pay is appropriate because Plaintiff has not suffered any lost wages because she is currently financially better off since she left her job at Dakkota. However, Plaintiff states that she was unemployed for a period of time after her termination. (Dkt. 52 ¶¶ 1, 35.) Even if Plaintiff's damages may be offset by her current employment, there may be some basis for relief due to her unemployment. Defendant provides no specific evidence that this unemployment is offset completely by her current employment, thus a genuine issue of material fact exists as to Plaintiff's potential damages.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [51] is denied as to Count I and granted as to Counts II and III. Defendant's Motion is also denied as to Plaintiff's claims for backpay and frontpay.

Date: March 9, 2016

JOHN W. DARRAH
United States District Court Judge